UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPAN COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 2976 |
| v. ) | |
| ) | Judge John W. Darrah |
| CALLAHAN CHEMICAL COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Stepan Company, filed suit, alleging unjust enrichment against Defendant, Callahan Chemical Company. Defendant has moved to transfer the case to the District of New Jersey pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to stay proceedings pending the outcome of a declaratory judgment action filed by Defendant against Plaintiff in that district.

### BACKGROUND

Defendant is a New Jersey corporation with its principal place of business in Palmyra, New Jersey. Plaintiff is a Delaware corporation with its principal place of business in Northfield, Illinois. During the period from September 1, 1995 to August 31, 1999, Plaintiff purchased from Defendant substantial amounts of sodium monochloracetate ("SMCA"), a chemical used in making various consumer and industrial cleaning products. The majority of the SMCA sold by Defendant to Plaintiff, approximately 96 percent, was shipped from Defendant's facility in New Jersey to Plaintiff's plant in New Jersey.

The remainder of the SMCA was shipped from Defendant's facility in New Jersey to

1

Plaintiff's plant in Illinois. In connection with these sales, Defendant visited, sent correspondence to and telephoned Plaintiff's headquarters in Illinois. Defendant also accepted payment drawn from Plaintiff's Illinois bank account.

Defendant did not manufacture SMCA itself but, rather, purchased the chemical from two other companies before reselling it to Plaintiff. Defendant's first supplier of SMCA was Hoechst GmbH, a German company, which delivered SMCA to Defendant from Hoechst's facility in New Jersey. At some point, Hoechst sold its chemicals division to Clariant Corporation, a Swiss company, which then began delivery of SMCA to Defendant from Clariant's South Carolina facility.

In the summer of 2001, the U.S. Department of Justice disclosed that it had uncovered a price-fixing conspiracy among manufacturers of SMCA and a related chemical, monochloroacetic acid ("MCAA"). A federal class-action antitrust suit was brought against SMCA and MCAA manufacturers, including Hoechst and Clariant ("MCAA class action"). The MCAA class action settled; and pursuant to the settlement agreement, direct purchasers of SMCA and MCAA received a portion of the settlement proceeds based on their purchases made between September 1, 1995 and August 31, 1999. Defendant was awarded nearly $1.7 million and, after paying the claims administrator's fee, received just over $1.1 million in net proceeds.

Plaintiff now brings this suit, alleging that Defendant was unjustly enriched by the settlement agreement. Plaintiff claims that Defendant "pass[ed] on to Plaintiff the illegal overcharges imposed by the conspiracy" and, therefore, was not itself injured by the price-fixing conspiracy. Plaintiff contends that the "refund" received by Defendant pursuant to the MCAA

settlement agreement is, therefore, an "unjust windfall." Plaintiff seeks to "recover that portion of Defendant's settlement agreement that is attributable to the SMCA it re-sold to Plaintiff."

Before this case was filed, Defendant brought suit in the U.S. District Court for the District of New Jersey, seeking a declaratory judgment that Plaintiff has no valid claim to any of the MCAA class-action settlement proceeds and that Defendant has not been unjustly enriched by its receipt of those proceeds. Defendant now moves to transfer this case to the District of New Jersey or, in the alternative, to stay this case pending the outcome of the New Jersey action.

## ANALYSIS

When duplicative cases are filed in different courts, there is "a *presumption* that . . . the first case should be allowed to proceed and the second should be abated." *Asset Allocation and Management Company v. Western Employers Insurance Company*, 892 F.2d 566, 573 (7th Cir. 1989) (emphasis original). Defendant argues that as the first-filed case, the New Jersey action should be given priority. However, because Defendant's first-filed suit is an action for declaratory judgment, admittedly filed in anticipation of Plaintiff's suit, it is not entitled to priority on the basis of being first in time. As the court of appeals has noted, "the Declaratory Judgment Act 'is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse.'" *Hyatt International Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002), *quoting Terra Nova Ins., Co., Ltd. v. Acer Latin Am., Inc.*, 931 F.Supp. 852, 854-55 (S.D. Fla. 1996); *see also Friedman v. Geller*, 925 F.Supp. 611 (E.D. Wis. 1996) (declaratory judgment "is not a way for a potential defendant to choose the time and forum of the dispute").

Defendant raises three arguments as to why the first-filed rule should apply even though the New Jersey case is an action for declaratory judgment. First, Defendant asserts that this case has only a tenuous connection to Illinois, given that the vast majority of the chemical shipments at issue took place in New Jersey. While this may be relevant to the analysis under 28 U.S.C. 1404(a) to the extent that it affects the convenience of the parties or witnesses or the interest of justice, it has no bearing on whether Defendant's New Jersey action should be given priority as a first-filed case. Second, Defendant argues that it filed the New Jersey action at some detriment to itself. The relevance of this point is not altogether clear. Finally, Defendant argues that its concern that Plaintiff would file suit ultimately turned out to be well-founded. While the imminent threat of a suit is relevant to the issue of whether a case or controversy exists, *see Norfolk Southern Railway Co. v. Guthrie*, 233 F.3d 532, 534-5 (7th Cir. 2000), such threat does not give a potential defendant license to file a preemptive declaratory judgment suit in a forum of its own choice. Defendant all but admits that it filed the New Jersey action purely as a way to select the forum for the resolution of Plaintiff's claims. Such a suit is not a legitimate use of the Declaratory Judgment Act; and, thus, Defendant's first-filed New Jersey action will have no bearing on the resolution of this motion to transfer.

*Transfer under 28 U.S.C. § 1404(a)*

Where a suit is filed with proper venue, a federal district court may "for the convenience of the parties and witnesses, [and] in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (*Coffey*). Although § 1404(a) limits consideration for transfer to three factors — convenience of the parties, convenience of the

4

witnesses, and the interest of justice – district courts have broad discretion in the interpretation and weighing of these factors, which serve more as guideposts for analysis than as rigid requirements. *See Coffey*, 796 F.2d at 719-20; *Chicago R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955), *cert denied*, 350 U.S. 822 (1955); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (*Van Dusen*). A lesser showing of inconvenience is required under § 1404(a) than under the traditional doctrine of *forum non conveniens*. *Coffey*, 796 F.2d at 220; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981). The movant bears the burden of establishing, by reference to particular circumstances, that the alternative forum is clearly more convenient. *Coffey*, 796 F.2d at 219-20.

*Convenience of the Parties and Witnesses*

In evaluating convenience of the parties, the district court considers five factors: (1) plaintiff's initial choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses to be called to testify in the case; and (5) the convenience of the parties themselves. *Plotkin v. IP Axess, Inc.*, 168 F.Supp.2d 899, 902 (N.D. Ill. 2001) (*Plotkin*); *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000) (*Amoco*); *also see Georgouse v. NaTec Resources, Inc.*, 963 F.Supp. 728, 730 (N.D. Ill. 1997); *APV North America, Inc. v. Transindustrial Development Corp.*, 2006 WL 51169 *1, *4 (N.D. Ill. 2006) (*APV*).

The plaintiff's choice of forum is generally entitled to substantial weight, especially when it is the plaintiff's home forum. *Plotkin*, 168 F.Supp.2d at 902; *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1167 (N.D. Ill. 1995). However, where the plaintiff's choice of forum has a relatively weak connection with the operative facts giving rise to the claim or is not the plaintiff's

5

home forum, the deference traditionally given to that selection is decreased. *Plotkin*, 168 F.Supp.2d at 902; *Bryant v. ITT Corp.*, 48 F.Supp.2d 829, 831 (N.D. Ill.1999); *Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F.Supp. 185, 188 (N.D. Ill. 1995); *APV*, 2006 WL 51169 at *5.

In the instant case, Plaintiff has chosen its home forum to litigate this dispute. However, the connection between this district and the facts giving rise to Plaintiff's claim are relatively weak. While Plaintiff claims that Defendant visited, telephoned and sent correspondence, purchase orders and invoices to its headquarters in Illinois, it is undisputed the great majority of the SMCA sold by Defendant to Plaintiff never left New Jersey during the course of the transactions. It was delivered from Defendant's New Jersey facility to Plaintiff's New Jersey facility. All things considered, the commercial dealings between the parties have closer ties to New Jersey than they do to Illinois. Additionally, Defendant's receipt of the MCAA settlement funds, a central point in Plaintiff's claims, has no connection to Illinois. These funds resulted from a settlement of a case litigated in the District of Columbia, were paid by foreign and domestic corporations, none of which have links to Illinois, and were paid to Defendant, a New Jersey corporation. Thus, while Plaintiff's choice of forum is given some deference, that deference is lessened due to the somewhat weak connections between this district and the facts giving rise to this case.

For similar reasons, considerations of the situs of material events and the sources of access to proof argue in favor of New Jersey as the more convenient venue. The MCAA settlement funds were paid to Defendant in New Jersey and have no connection to Illinois. Defendant's decisions regarding pricing and whether to pass on any price increase resulting from

the conspiracy were made in New Jersey, and any proof of such pass-on would be found there as well. Thus, these two factors argue in favor of transfer.

Consideration of the convenience for the witnesses and the parties themselves also favors transfer to a limited extent. Whereas Defendant has no place of business in Illinois, Plaintiff has a facility in New Jersey. Thus, none of Defendant's witnesses will be in Illinois; but some of Plaintiff's witnesses may be in New Jersey. Furthermore, Plaintiff cannot reasonably claim that New Jersey is an overly inconvenient forum, considering the amount of business that it does in the state.

For the above reasons, considerations of convenience to the parties and the witnesses weigh in favor of transfer to the District of New Jersey.

### Interest of Justice

In addition to considering the convenience of the parties, witnesses, and evidence in relation to the proposed forum and the present forum, the court must also consider which forum best serves "the interest of justice." *Coffey*, 796 F.2d at 220; *Van Dusen*, 376 U.S. at 625. The interest of justice rubric focuses on the efficient administration of the courts, not the merit of the underlying dispute. *Coffey*, 796 F.2d at 221; *Plotkin*, 168 F.Supp.2d at 904. This analysis includes considerations such as "(1) the speed at which a case will proceed to trial, (2) the court's familiarity with the applicable law, (3) the relation of the community to the occurrence at issue, and (4) the desirability of resolving controversies in their locale." *Plotkin*, 168 F.Supp.2d at 904; *APV*, 2006 WL 51169 at *6; *see Macedo v. Boeing Co.*, 693 F.2d 683, 690 (7th Cir. 1982) (discussing public interest factors of transfer analysis). Even where the convenience of the parties and witnesses may call for a different result, the "interest of justice" component may be

determinative in particular cases. *Coffey*, 796 F.2d at 220; *see e.g., Lemke v. St. Margaret Hosp.*, 593 F.Supp. 25 (N.D. Ill. 1983).

The two most relevant statistics in determining the speed at which a case is likely to proceed to trial are (1) the median number of months from filing to disposition for civil cases and (2) the median number of months from filing to trial for civil cases. *Plotkin*, 168 F.Supp.2d at 904; *Amoco*, 90 F.Supp.2d at 962. For the period ending September 30, 2006, the median time from filing to disposition for civil cases was 6.5 months in the Northern District of Illinois and 8.2 months in the District of New Jersey. *See* Admin. Office of the U.S. Courts, FEDERAL COURT MANAGEMENT STATISTICS (2006), *available at* http://www.uscourts.gov/cgi-bin/cmsd2006.pl. The median time from filing to trial for civil cases was 26.4 months in the Northern District of Illinois and 33.0 months in the District of New Jersey. These figures indicate that the case would progress slightly faster in the Northern District of Illinois. Thus, this factor weighs against transfer.

The next consideration under the interests of justice rubric is the court's familiarity with applicable law. The parties disagree as to what law applies to Plaintiff's unjust enrichment claim. Plaintiff contends that Illinois law will apply, while Defendant argues that New Jersey law applies. A federal court exercising diversity jurisdiction applies the choice of law doctrines of the state in which the court sits. *See ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 706 (7th Cir. 1995) *citing Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941). "Ordinarily, Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions." *Chapman and Associates, Ltd. v. Kitzman*, 193 Ill.2d 560 (2000). Under Section 221 of the Restatement, a court applies the law that has the most significant relationship to the

occurrences and the parties. According to the Restatement, the contacts to be taken into account include:

> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
>
> (b) the place where the benefit or enrichment was received,
>
> (c) the place where the act conferring the benefit or enrichment was done,
>
> (d) the domicile, residence, nationality, place or incorporation and place of business of the parties, and
>
> (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

Restatement (Second) Conflict of Laws § 221 (1971).

For purposes of resolving the motion to transfer only, an analysis of these factors point towards New Jersey as the state with the most significant relationship to the parties and occurrences. The relationship between the parties was centered in New Jersey. The bulk of the SMCA sold by Defendant to Plaintiff, over 95 percent, never left New Jersey. The Illinois-related aspects of the relationship raised by Plaintiff, such as Defendant's visiting and telephoning Plaintiff's Illinois offices and drawing payment from an Illinois bank, do not outweigh that fact.

Consideration of where the alleged enrichment was received also supports the application of New Jersey law. Plaintiff argues that Defendant was unjustly enriched when it received the portion of the MCAA settlement that should allegedly go to Plaintiff. The MCAA settlement was received by Defendant in New Jersey.

9

The place where the act conferring the enrichment was done, i.e., the settlement of the MCAA class action, supports the application of neither Illinois nor New Jersey law, since the case was settled in the District of Columbia.

Consideration of the domicile, residence, nationality, place of incorporation and places of business of the parties supports the application of New Jersey law. Defendant is a New Jersey corporation with its primary place of business in New Jersey. Defendant does not have a place of business in Illinois. By contrast, although Plaintiff has its headquarters in Illinois, it does have a place of business in New Jersey, which was at the center of the relationship between the parties. Thus, this factor supports the application of New Jersey law.

The final consideration is where a physical thing substantially related to the enrichment, in this case the SMCA, was located at the time of the enrichment. At the time of the enrichment – the time at which defendant received the proceeds from the MCAA settlement – the SMCA was likely no longer in any centralized location, having been distributed through the channels of commerce. However, at the time of the commercial transactions that Plaintiff allege entitle it to a portion of the MCAA settlement, the SMCA was primarily located in New Jersey. Thus, this factor weighs in favor of New Jersey law.

Overall, the application of Section 221 of the Restatement indicates that New Jersey law will apply to Plaintiff's claims. As the Court for the District of New Jersey is more familiar with New Jersey law, this factor argues that the transfer of the case would be in the interests of justice.

Neither consideration of the relation to the community to the occurrences at issue nor the desirability of resolving controversies in their locale weighs in favor of litigating this matter in Illinois. Plaintiff seeks to recover a portion of a settlement reached in the District of Columbia

10

and paid to a company in New Jersey. Any interest that the Illinois community may have in resolving this controversy within this district is more than balanced out by the similar interests of New Jersey, where the dealings between the parties were centered.

## CONCLUSION

In light of the factors discussed above, Defendant's motion to transfer is granted.

Case No. 07 C 2976 is transferred to the District of New Jersey.

Date: October 3, 2007

JOHN W. DARRAH
United States District Court Judge