```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| STEPAN COMPANY,<br><br>               Plaintiff,<br><br>   v.<br><br>CALLAHAN COMPANY,<br><br>               Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 07-5115 (JEI)<br><br>**OPINION** |

**APPEARANCES:**

GIBBONS, P.C.
By: Steven D. Johnson, Esq.
1700 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2769
    and
WILDMAN HARROLD ALLEN & DIXON LLP
By: Paul Olszowka, Esq. (*pro hac vice*)
    Counsel for Plaintiff

EARP COHN P.C.
By: Douglas F. Johnson, Esq.
20 Brace Road, 4th Floor
Cherry Hill, NJ 08034
    Counsel for Defendant


**IRENAS**, Senior District Judge:

    Presently before the Court are Motions for Summary Judgment filed by Plaintiff Stepan Company ("Stepan") and Defendant Callahan Company ("Callahan"). This case involves a dispute about settlement funds awarded to Callahan, a distributor of chemicals, in a federal antitrust class action for illegally inflated prices of a chemical product. Stepan, a purchaser of

that chemical product from Callahan, filed this lawsuit, claiming that Callahan's retention of the settlement funds is unjust because Callahan simply passed on all overcharges to Stepan.[1] The central issue raised by the parties' Motions is whether federal antitrust law preempts Stepan's unjust enrichment claim. The Court finds that it does and, for the reasons stated below, will grant Callahan's Motion and deny Stepan's Motion.

I.

Stepan is a Delaware corporation with its principal place of business in Northfield, Illinois.  (Pl's 56.1 Stat. ¶ 2.)[2] Stepan manufactures chemicals used in consumer products and industrial applications, including surfactants, which are chemicals that alter a liquid's surface tension.  (*Id.* ¶¶ 1,6.) Sodium monochloroacetate ("SMCA") is used to make surfactants. (*Id.* ¶ 6.)  Callahan, a New Jersey corporation with its principal place of business in Palmyra, New Jersey, is a distributor of chemical products.  (*Id.* ¶¶ 4-5.)

Between August 1995 and September 1999 (the "Relevant Period"), Callahan sold SMCA only to Stepan.  (*Id.* ¶¶ 7-8.) During the Relevant Period, Callahan purchased the SMCA that it

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

[2] References to "Pl's 56.1 Stat." are to the statement of undisputed material facts submitted in support of Stepan's Motion.

2

resold to Stepan from Hoechst GmbH ("Hoechst") and the Clariant Company ("Clariant").[3]  (*Id.* ¶ 9.)  Stepan's purchases of SMCA were made pursuant to written purchase orders or telephone calls to the New Jersey offices of Callahan.  (*Id.* ¶ 20.)  The terms of Stepan's standard purchase order applied to all of its purchases, including those made over the phone.  (*Id.*)  During the Relevant Period, Callahan sold approximately 5,340,000 pounds of SMCA to Stepan at a total price of $3,953,000.  (*Id.* ¶¶ 10-11.)

In October 2001, direct purchasers of SMCA filed a private antitrust class action in the United States District Court for the District of Columbia against several manufacturers of the chemical.  (*Id.* ¶ 23.)  Callahan's SMCA suppliers Clariant and Hoechst, as well as other manufacturers, were defendants in the action, and Callahan was a member of the plaintiff class.  (*Id.* ¶¶ 24-25.)  The plaintiff class sought treble damages to recover the inflated prices that class members paid for SMCA as a result of the defendants' alleged price fixing.  (*Id.* ¶ 26.)

In November 2003, the class action was settled, and, pursuant to the settlement agreement, the defendants contributed to a settlement fund.  (*Id.* ¶ 28.)  Direct purchasers of SMCA that could document their purchases from the defendants could recover a pro rata portion of the settlement fund calculated

---

[3] Hoechst was Callahan's supplier of SMCA until June of 1997, and Clariant supplied SMCA to Callahan from June 1997 until the end of the Relevant Period.  (Pl's 56.1 Stat. ¶ 9.)

according to the total volume of claims made. (*Id.* ¶ 29.) Callahan filed a claim seeking proceeds from the class action fund based on its purchases of SMCA from Hoechst and Clariant during the Relevant Period. (*Id.* ¶ 30.)

Callahan was awarded its portion of the settlement in April 2006, totaling $1,676,710.54. (*Id.* ¶ 32.) After paying a fee owed to a claims administrator contracted to handle its class action claim, Callahan received net proceeds of $1,123,396.06. (*Id.* ¶ 33.)

Stepan later learned of Callahan's settlement award. (*Id.* ¶ 34.) Efforts between Stepan and Callahan to resolve the present dispute concerning entitlement to the SMCA class action proceeds were unsuccessful. (*Id.*) Stepan then filed this action in the Northern District of Illinois on May 29, 2007, alleging unjust enrichment. (*Id.*) Callahan answered the complaint and moved to transfer the case to this Court. (*Id.*)

In October 2007, Judge John W. Darrah of the Northern District of Illinois granted Callahan's Motion to Transfer. *Stepan Co. v. Callahan Chem. Co.*, No. 07-C-2976, 2007 WL 2908818, at *6 (N.D. Ill. Oct. 3, 2007). Judge Darrah found that New Jersey law applied to Stepan's claim because both Stepan and Callahan have places of business in New Jersey and the SMCA was located in New Jersey at the time of the commercial transactions that form the basis of Stepan's claim. *Id.* at *5-6.

After the case was transferred to this Court, the parties filed the present Motions for Summary Judgment on March 31, 2008.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the nonmoving party bears the burden of proof, the burden of the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Pub. Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 325). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The summary judgment standard is not affected when the parties file cross-motions for summary judgment.[4]  *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).  Such motions "'are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'"  *Transportes Ferreos de Venez. II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001) (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).  If after review of cross-motions for summary judgment the record reveals no genuine issues of material fact, then judgment will be entered in favor of the deserving party in light of the law and undisputed facts.  *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).

**III.**

Stepan's Motion for Summary Judgment contends that (1) federal antitrust law and policy do not preempt its unjust enrichment claim, and (2) Callahan was unjustly enriched. Callahan's Motion for Summary Judgment asserts that Stepan's

---

[4] Although the parties did not formally term their Motions "cross-motions," for the purposes of the legal standard their separate motions will be treated as such.

6

unjust enrichment claim is (1) preempted by federal antitrust law and policy, and (2) barred by the existence of written contractual terms.  Because the Court finds the issue of preemption by federal antitrust law and policy to be dispositive, the remaining issues need not be addressed.

The parties do not dispute that under federal antitrust law "injured persons" are only those entities or individuals who *directly* purchase goods from antitrust violators.[5]  *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977).  The central dispute here is whether this direct purchaser limitation precludes Stepan's recovery as an indirect purchaser under the state law claim of unjust enrichment.

In *California v. ARC America*, the United States Supreme Court faced a similar issue; that is, whether the direct purchaser limitation prevented indirect purchasers from recovering damages under state antitrust laws that *expressly* provided such purchasers a damages cause of action.  490 U.S. 93,

---

[5] The Sherman Act prohibits conspiracies that restrain interstate commerce: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.
   Section 4 of the Clayton Act provides private remedies for those persons who have been damaged by a violation of the federal antitrust laws:
> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15(a).

7

100 (1989).  In *ARC America*, several states brought federal and state antitrust claims on behalf of direct and indirect purchasers, alleging a nationwide conspiracy to fix and inflate the price of cement.  *Id.* at 97.  A settlement in full satisfaction of both the state and federal antitrust claims was reached, but the direct purchasers objected to sharing any of the funds with the indirect purchasers.  *Id.* at 98-99.  The Court of Appeals for the Ninth Circuit held that the state antitrust laws that provided a remedy to indirect purchasers were preempted by federal antitrust law because the state statutes frustrated the purposes and objectives of Congress.  *Id.* at 99, 101-02.  In framing the issue, the Supreme Court explained:

> Under federal law, no indirect purchaser is entitled to sue for damages for a Sherman Act violation, and *there is no claim here that state law could provide a remedy for the federal violation that federal law forbids*.  Had these cases gone to trial and a Sherman Act violation been proved, only direct purchasers would have been entitled to damages for that violation, and there is no suggestion by the parties that the same rule should not apply to distributing that part of the fund that was meant to settle the Sherman Act claims.

*Id.* at 100 (emphasis added).  However, the Supreme Court reversed the Court of Appeals and held that the indirect purchasers could recover the portion of the settlement funds due to them under state antitrust law, while maintaining that the funds allocable to federal claims could only be distributed to direct

purchasers.[6]

This holding protects a state's ability to legislate a remedy for indirect purchasers by providing a claim against antitrust violators under state law.[7]  *ARC America* makes clear that "state causes of action are not preempted solely because they impose liability over and above that authorized by federal law."  490 U.S. at 105.  By protecting the indirect purchasers' ability to recover damages for violations of state antitrust laws, *ARC America* ensures that they do not have to absorb illegal overcharges without any legal recourse.

The relief that Stepan seeks here—compensation for the overcharges that were passed on by Callahan—was available through a state antitrust action that Stepan did not pursue.  As an indirect purchaser, Stepan had a cause of action directly against Hoechst and Clariant under Illinois state law.  *See* 740 Ill. Comp. Stat. Ann. 10/7(2) ("No provision of this Act shall deny any person who is an indirect purchaser the right to sue for damages.").  However, instead of bringing a state antitrust claim directly against the antitrust violators, Stepan brought an

---

[6] "But as we said earlier, the settlement covered both federal and state-law claims, and whatever amount is allocable to federal claims will be distributed only to direct purchasers.  Indirect purchasers will participate only in distributing the funds available to claimants under state law."  490 U.S. at 104-05.

[7] *ARC America* does *not* hold that a state can pass a law giving an indirect purchaser a cause of action against a non-violating direct purchaser that collects money from an antitrust violater.

unjust enrichment claim against Callahan, the direct purchaser, claiming entitlement to its federal antitrust settlement.

Stepan's unjust enrichment claim is not an attempt to impose liability on the antitrust violators over and above that authorized by federal law.  Instead, it is an attempt to obtain recovery from a direct purchaser by bringing a subsequent unjust enrichment action.  While *ARC America* ensured that indirect purchasers could obtain some relief against illegal overcharges through state antitrust laws, it also preserved the existing limitation that only direct purchasers may recover under federal antitrust law.  Stepan seeks to circumvent that limitation by bringing a state law action to deprive a direct purchaser of funds properly awarded under federal law.

In upholding the direct purchaser limitation of federal antitrust law, *ARC America* also reinforced the policy rationales that led the Supreme Court to first impose the limitation.  In *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, the Supreme Court rejected the defense that indirect rather than direct purchasers were the parties injured by an antitrust violation. 392 U.S. 481, 494 (1968).  The antitrust violator in that case argued that the direct purchaser that brought the antitrust claims was not entitled to recover because it passed on all overcharges to its customers; therefore, according to the violator, the direct purchaser did not suffer injury.  *Id.* at

10

491-92. The Supreme Court rejected this pass-on defense, holding that a direct purchaser is injured within the meaning of section 4 of the Clayton Act by the full amount of the overcharge by the antitrust violator. *Id.* at 494.

The first reason for the limitation of injured persons to direct purchasers was an unwillingness to complicate the antitrust action with attempts to trace the effects of the overcharge on a buyer's pricing, sales, and profits:

> A wide range of factors influence a company's pricing policies. Normally the impact of a single change in the relevant conditions cannot be measured after the fact; indeed a businessman may be unable to state whether, had one fact been different (a single supply less expensive, general economic conditions more buoyant, or the labor market tighter, for example), he would have chosen a different price. Equally difficult to determine, in the real economic world rather than an economist's hypothetical model, is what effect a change in a company's price will have on its total sales. Finally, costs per unit for a different volume of total sales are hard to estimate. Even if it could be shown that the buyer raised his price in response to, and in the amount of, the overcharge and that his margin of profit and total sales had not thereafter declined, there would remain the insuperable difficulty of demonstrating that the particular plaintiff could not or would not have raised his prices absent the overcharge or maintained the higher price had the overcharge been discontinued.

*Id.* at 492-93. A second reason for limiting injured persons to direct purchasers was the Supreme Court's concern that unless direct purchasers could sue for the full amount of the overcharge, antitrust violators "would retain the fruits of their illegality" because no one plaintiff would have sufficient incentive to bring suit. *Id.* at 494.

11

These policy rationales were also reinforced when the Supreme Court decided in *Illinois Brick Co. v. Illinois* that the pass-on theory may not be used offensively by an indirect purchaser against an antitrust violator in a federal antitrust action. 431 U.S. at 736. In *Illinois Brick*, the state of Illinois and local government entities sought damages under the Clayton Act for fixed and inflated prices of concrete. *Id.* at 726-27. Illinois and the government entities were not direct purchasers of the concrete; instead, they were indirect purchasers that bought completed structures built by general contractors, who had purchased concrete from masonry contractors, who had in turn purchased the concrete from the conspiring manufacturers. *Id.* at 726. In denying the indirect purchasers' offensive use of the pass-on theory and reaffirming that direct purchasers "are permitted to recover the full amount of the overcharge," *id.* at 746, the Supreme Court echoed the policy rationales previously set forth in *Hanover Shoe*.

Allowing both direct and indirect purchasers to recover under federal law "would greatly complicate and reduce the effectiveness of already protracted treble-damages proceedings." *Ill. Brick*, 431 U.S. at 732. The Supreme Court explained:

> Indeed, the evidentiary complexities and uncertainties involved in the defensive use of pass-on against a direct purchaser are multiplied in the offensive use of pass-on by a plaintiff several steps removed from the defendant in the chain of distribution. The demonstration of how much of the overcharge was passed on by the first

12

>     purchaser must be repeated at each point at which the
>     price-fixed goods changed hands before they reached the
>     plaintiff.

*Id.* at 732-33.  The Supreme Court determined that this additional complexity would impact the incentive to sue:

>     The apportionment of the recovery throughout the
>     distribution chain would increase the overall costs of
>     recovery by injecting extremely complex issues into the
>     case; at the same time such an apportionment would reduce
>     the benefits to each plaintiff by dividing the potential
>     recovery among a much larger group.  Added to the
>     uncertainty of how much of an overcharge could be
>     established at trial would be the uncertainty of how that
>     overcharge would be apportioned among the various
>     plaintiffs.  This additional uncertainty would further
>     reduce the incentive to sue.  The combination of
>     increasing the costs and diffusing the benefits of
>     bringing a treble-damages action could seriously impair
>     this important weapon of antitrust enforcement.

*Id.* at 745.[8]

Stepan argues that the policy behind the direct purchaser limitation does not support its application here.[9]  Because of

---

[8] In addition, the Supreme Court concluded that the offensive use of pass-on would "create a serious risk of multiple liability for defendants." 431 U.S. at 730.

[9] It should be noted that the Supreme Court has defined a very narrow scope for exceptions to the direct purchaser limitation by citing only two situations where the policy reasons do not warrant the rule's application. *See Ill. Brick*, 431 U.S. at 735-36 (pre-existing cost-plus contract, discussed hereinafter); *id.* at 736 n.16 (only applicable "where the direct purchaser is owned or controlled by its customer").  The primary exception is a pre-existing cost-plus contract between the direct and indirect purchasers.  In such a contract, the buyer is committed to purchasing a fixed quantity regardless of price, and the seller is insulated from any decrease in sales that might result from passing on the entire overcharge.  *Id.* at 736.  Because the contract is pre-existing, "the effect of the overcharge is essentially determined in advance."  *Id.*  Thus, the complexity of market interactions do not impact a cost-plus contract, making it easy to demonstrate that the indirect, not direct, purchaser was harmed.  *Id.*  Here, however, the parties agree that there was no cost-plus contract during the Relevant Period.

Stepan's unique commercial relationship with Callahan, in which it was the only purchaser of SMCA during the Relevant Period, Stepan argues that it would be unnecessary for the Court to calculate anything because the settlement fund should be awarded in its entirety to Stepan.[10]

First, Stepan incorrectly asserts entitlement to the full amount of Callahan's recovery.  The holding in *Hanover Shoe* entitles a direct purchaser to damages in a federal antitrust suit even if it passes on the entire overcharge.  Stepan's claim of entitlement to the full settlement amount directly conflicts with this holding.

In order to establish unjust enrichment, Stepan would need to prove that Callahan received a benefit and that retention of that benefit would be unjust.  *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994).  However, a holding that Callahan's retention of the federal antitrust settlement award would be unjust directly conflicts with the Supreme Court's holding that direct purchasers are "permitted to recover the full amount of

---

[10] Stepan also argues that federal antitrust remedies are not inalienable benefits.  To support this, Stepan cites *In re Fine Paper Litigation State of Washington* as holding that assignments of claims under the Sherman and Clayton Acts are valid.  632 F.2d 1081, 1090 (3d Cir. 1980).  However, at the time of, and in connection with, the sales of the product, direct purchasers voluntarily entered into a written contract with the indirect purchaser that assigned any and all claims for illegal overcharges to the indirect purchaser.  *Id.* at 1089.  The Third Circuit simply enforced assignments of claims that the direct and indirect purchasers had bargained for in the context of their sales transactions.  Here, Stepan's purchase orders did not contain any assignments of claims or benefits obtained in an antitrust settlement.

the overcharge." *Ill. Brick*, 431 U.S. at 746. *Cf. Island Mortgages of N.J. v. Minn. Mining & Mfg. Co.*, 860 A.2d 1013, 1018 (N.J. Super. Ct. Law Div. 2004) (barring an indirect purchaser's attempt to bring monopolization charges under the New Jersey Consumer Fraud Act because of the conflict with New Jersey's antitrust law which, like federal law, does not allow claims by indirect purchasers against antitrust violators). Thus, retention of litigation damages by a direct purchaser specifically permitted under federal antitrust law can hardly be called unjust, particularly since the same law denies recovery to the indirect purchaser that is now here as an unjust enrichment plaintiff.

   Were the Court to permit this action to proceed, it would need to make numerous calculations, including how Callahan's volume of sales to Stepan were affected by the overcharges, whether Callahan lost profits from foregone sales because of the higher price it was forced to pass on, the extent to which Stepan paid higher prices because of the overcharges, and how much of the overcharges were passed on to Stepan's own customers. In order to make these calculations, the Court would need to consider extensive evidence of pricing, profits and sales, as well as complex economic theories about the interplay of these factors. As the Supreme Court acknowledged, attention to the laws of economics "can only heighten the awareness of the

15

difficulties and uncertainties involved in determining how the relevant market variables would have behaved had there been no overcharge." *Ill. Brick*, 431 U.S. at 743.

The very reason that the Supreme Court limited federal antitrust recovery to direct purchasers was to avoid this complicated task of tracing the effects of the overcharge on prices, sales, costs, and profits at various levels in the distribution chain.  In addition to lessening the burden on courts, the Supreme Court was interested in protecting the direct purchasers from complex litigation.  In reaffirming the *Hanover Shoe* holding that direct purchasers may recover the full amount of the overcharge, the Court explained that direct purchasers would also be "spared the burden of litigating the intricacies of pass-on." *Id.* at 745-46.

Furthermore, if Stepan were permitted to go forward with its unjust enrichment claim and collect the settlement proceeds, the Court could potentially be faced with similar claims from Stepan's customers all the way down the chain of commerce, with each customer seeking its portion of the funds awarded to the entity from which it purchased the product.  This endless chain of unjust enrichment claims would not only enmesh the Court in complex economic calculations, but it would threaten the efficient enforcement of antitrust laws.

Allowing Stepan's unjust enrichment action to proceed would

also reduce the incentives for direct purchasers to bring federal antitrust lawsuits.  Permitting an indirect purchaser to acquire a direct purchaser's settlement proceeds through an unjust enrichment action would open the door to an erosion of a direct purchaser's recovery under federal antitrust law through subsequent state actions.  If indirect purchasers are able to use a state claim to recover a portion of a direct purchaser's federal antitrust award, a direct purchaser would be faced with the choice of exhausting the funds in a legal battle to defend its right to keep them, or distributing them into the outstretched hands of the indirect purchasers.  The direct purchaser's incentive to bring a federal antitrust suit would be significantly diminished if the damages ultimately awarded were vulnerable to subsequent state claims.

   Stepan seeks to obtain recovery from a direct purchaser by bringing an unjust enrichment action in an effort to circumvent the Supreme Court precedent that bars it from seeking recovery in a federal antitrust action.  Essentially, Stepan declined to pursue a state antitrust claim against the actual antitrust violators, waited while Callahan pursued compensation for the illegal overcharges under federal antitrust law, and now asks the Court to permit it to proceed with an unjust enrichment action to do what it could not do under federal law.  Stepan's unjust enrichment action directly conflicts with federal antitrust law

17

as construed by the Supreme Court.  State law that conflicts with federal law by "'stand[ing] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" is preempted.[11]  *ARC America*, 490 U.S. at 101 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).  Accordingly, this Court holds that Stepan's unjust enrichment claim is preempted by federal antitrust law.[12]

---

[11]  The Supremacy Clause, U.S. Const. art. VI, cl. 2, under which any state law interfering with federal law must yield, is the source of the preemption doctrine.  *Gonzalez v. Raich*, 545 U.S. 1, 29 (2005); *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992).

> Federal law may preempt state law in any of three ways.  First, in enacting the federal law, Congress may explicitly define the extent to which it intends to preempt state law.  Second, even in the absence of express preemptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government.  Finally, if Congress has not displaced state regulation entirely, it may nonetheless preempt state law to the extent that the state law actually conflicts with federal law.  Such a conflict arises when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Mich. Canners & Freezers Ass'n, Inc. v. Agric. Mktg. & Bargaining Bd.*, 467 U.S. 461, 469 (1984) (citations and internal quotation marks omitted); *see also ARC America*, 490 U.S. at 100-01.

Because Congress has not entirely displaced state regulation in the area of antitrust and states are free to legislate remedies for indirect purchasers under their own antitrust laws, preemption arises in this case because of a conflict between state and federal law.  Although Stepan could have recovered from the antitrust violators as an indirect purchaser under Illinois state antitrust law, it did not pursue this recovery.  Instead, Stepan seeks Callahan's federal antitrust award in a state unjust enrichment action that directly conflicts with the *Hanover Shoe* and *Illinois Brick* rules limiting recovery under federal antitrust law to direct purchasers.  Although "the *Hanover Shoe* [and *Illinois Brick*] rule[s] den[y] recovery [under federal law] to those indirect purchasers who may have been actually injured by antitrust violations," *Ill. Brick*, 431 U.S. at 746, Stepan had a remedy available under state antitrust law that posed no preemption problem.

[12]  Because the ruling in this case is based on federal preemption, the Court need not decide whether, in fact, Stepan's cause of action could survive a motion brought under Federal Rule of Civil Procedure 12(b)(6), or one brought under Rule 56, but premised on a different theory.  The Court noted

**IV.**

For the reasons set forth above, the Court will grant Callahan's Motion for Summary Judgment and will deny Stepan's Motion for Summary Judgment.  The Court will issue an appropriate Order.

Dated: July 29, 2008

s/ Joseph E. Irenas<br>
JOSEPH E. IRENAS, S.U.S.D.J.

---

earlier, however, it is difficult to find "unjust" the retention of litigation damages specifically authorized by law to Callahan and specifically denied to Stepan.